UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEE E. AMMONS, JR., <br><br> Plaintiff, <br><br> v. <br><br> THOMAS J. DART, et al., <br><br> Defendants. | Case No. 16-cv-7770 <br><br><br> Judge John Robert Blakey |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lee Ammons sued his employer, Cook County Sheriff Thomas Dart, and Cook County, alleging multiple discrimination claims under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.* Defendants moved for summary judgment on all claims. For the reasons explained below, this Court grants the motion.

**I.    Background**

The facts come from Defendants' Local Rule 56.1 statement of facts [27] and Plaintiff's statement of additional facts [34]. Plaintiff failed to respond to Defendants' facts, so this Court deems those facts admitted pursuant to Local Rule 56.1. *See Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000).

**A.    Plaintiff's Declaration**

Plaintiff's statement of facts [34] relies entirely upon his own declaration [35] for support. Plaintiff filed this case in August 2016 and never amended his complaint, [1], but his declaration discusses—for the first time—events that

happened as late as June and November 2017, *see* [34] ¶¶ 5–9. Plaintiff may not amend his complaint at summary judgment by raising new allegations for the first time. *See Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 412 (7th Cir. 2009); *Griffin v. Potter*, 356 F.3d 824, 830 (7th Cir. 2004). Thus, this Court disregards paragraphs 5–9 of Plaintiff's statement of facts and any corresponding arguments in Plaintiff's response brief [33].

Additionally, paragraph 3 of Plaintiff's declaration contradicts his deposition. At his June 2017 deposition, Plaintiff testified that Defendants failed to give him a replacement chair after someone stole his ergonomic chair. [27-3] at 8. But in his undated declaration (filed in January 2018), Plaintiff now says that Defendants gave him a "purported replacement ergonomic chair," but the replacement "was too small to safely and comfortably fit me." [35] ¶ 3. Both statements contradict Defendants' statement, deemed admitted, that they offered Plaintiff another ergonomic chair, but he did not like that chair because it lacked arms. [27] ¶ 11.

Declarations like Plaintiff's, though signed under oath, typically represent a lawyer's work product; thus, when offered to contradict the declarant's prior sworn testimony, they "are so lacking in credibility as to be entitled to zero weight in summary judgment proceedings unless the affiant gives a plausible explanation for the discrepancy." *Beckel v. Wal-Mart Assocs., Inc.*, 301 F.3d 621, 623 (7th Cir. 2002). Here, Plaintiff offers no such explanation for the discrepancy between his testimony and his declaration, and the declaration appears designed to manufacture an issue of fact about whether the replacement chair met Plaintiff's

needs. *See Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir. 1996). Thus, this Court disregards paragraph 3 of Plaintiff's declaration and any corresponding arguments. *See Beckel*, 301 F.3d at 623.

### B. ADA Background

Plaintiff, an African-American man, works for the Cook County Sheriff's Office as a correctional officer. [27] ¶ 1. Plaintiff kept his job as a correctional officer at his regular salary throughout the events described here. *Id.* ¶ 5. His current posting in Division Four of the Cook County Jail requires him to maintain order and security near the classrooms where detainees attend school. *Id.* ¶ 19.

Plaintiff suffers from diabetes and high blood pressure. *Id.* ¶ 6. In early 2015, he and the Sheriff's HR Department engaged in the interactive process required under the ADA. *Id.* ¶ 7. The Sheriff's Office agreed to the following accommodations for Plaintiff in April 2015: no prolonged standing, no lifting over twenty-five pounds, close proximity to a bathroom and refrigerator, and an ergonomic chair. *Id.* ¶ 8. The Sherriff's Office renewed those accommodations in January 2016, and also said that Plaintiff could bring insulin, needles, and glucose-testing supplies to work in a cooler. *Id.* ¶ 9.

Plaintiff originally requested a refrigerator to keep his insulin cool during the day. *Id.* ¶ 15. In June 2015, the Sheriff's Office gave him a cooling bag to store the insulin, but Plaintiff said that he did not want a cooling bag because it leaked and he found it inconvenient. *Id.* ¶ 16. Instead, Plaintiff chose to share a refrigerator with the employee who occupied the office next to his post. *Id.* ¶ 17.

3

Plaintiff does not like to inject insulin in front of his coworkers. *Id.* ¶ 12. In January or February 2016, Plaintiff's supervisor, Sergeant Milton, prevented Plaintiff from taking his insulin shots on time twice in one day. *Id.* ¶ 18. The record does not indicate how Milton did this, or that Plaintiff suffered any medical harm from taking the shots late. *See id.* On a couple occasions, Milton purportedly made fun of Plaintiff by telling him, in front of detainees: "Go take your medicine." *Id.* ¶ 21.

Around February 2016, the Sheriff's Office promised Plaintiff that it would make a locked washroom available for him to administer his shots. *Id.* Plaintiff requested a "private bathroom." *Id.* The Sheriff's Office moved Plaintiff to an assignment within three or four steps of a bathroom that has a lock on the outer door and on each stall door. *Id.* ¶¶ 13, 26–27.

The exact timing remains unclear, but at some point after the Sheriff's Office gave Plaintiff an ergonomic chair, someone on the midnight shift took the chair. *Id.* ¶ 11. Plaintiff's supervisors returned the chair to him, but it now tilted to the right due to damage. *Id.* Rebecca Rierson, who handles ADA issues for the Sheriff's Office, offered Plaintiff another ergonomic chair; he did not like that chair, however, because it lacked arms. *Id.*

## C. Title VII Background

In January 2015, a white coworker, Deputy Cuddy, used the N-word in Plaintiff's presence three times over four days. *Id.* ¶ 23. Around the same time (neither party specifies exactly when), another white coworker, Deputy Cordoba,

4

squeezed Plaintiff's chest on three occasions. *Id.* ¶ 24. Plaintiff complained to supervisors, and the Sheriff's Office moved him to Division Four at the same salary. *Id.* ¶ 25. That transfer also gave Plaintiff access to a locked bathroom. *Id.*

## II. Legal Standard

Courts should grant summary judgment when the moving party shows that no genuine dispute exists as to any material fact and the evidence weighs so heavily in the moving party's favor that the moving party "must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see also* Fed. R. Civ. P. 56. A genuine dispute as to a material fact exists when, based upon the evidence, a reasonable jury could find for the non-moving party. *Anderson*, 477 U.S. at 248. To show a genuine dispute as to a material fact, the non-moving party must point to "particular materials in the record," and cannot rely upon the pleadings or speculation. *Olendzki*, 765 F.3d at 746.

At summary judgment, courts must evaluate evidence in the light most favorable to the non-moving party and must refrain from making credibility determinations or weighing evidence. *Rasho v. Elyea*, 856 F.3d 469, 477 (7th Cir. 2017) (citing *Anderson*, 477 U.S. at 255). The moving party bears the burden of establishing the lack of genuine disputes as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## III. Analysis

Plaintiff's complaint contains three separate counts, but the substantive allegations within the first two counts possess little direct relationship to the counts

5

as Plaintiff styled them. Thus, this Court addresses Count III first before untangling Counts I and II.

### A. Count III: "Race Discrimination and Harassment"

Count III alleges racial discrimination and a hostile work environment under Title VII. *See* [1] ¶¶ 56–63. Defendants argue that Count III fails because Plaintiff did not suffer an adverse employment action and because the isolated incidents of harassment that Plaintiff faced did not create a hostile work environment. [26] at 12. Plaintiff's response brief includes only one paragraph addressing Count III:

> Defendants admit that Cordoba squeezed Plaintiff's breast on three occasions. (Defendants' *SUF*, para. 24). Defendants aver that they transferred Plaintiff to comply with his ADA accommodations and restrictions. (Defendants' *SUF*, para. 25). Thus, genuine issues of material fact [sic] as to the effectiveness of Defendants' measures and responsibility for providing Plaintiff a workplace that is not hostile on the basis of his race. Summary judgment must be denied as to the Race-based discrimination and harassment claim, Count III.

[33] at 7.

Plaintiff's counsel effectively waived Count III by making this perfunctory and undeveloped argument without citing any legal authority or evidentiary support. *See Smith v. Ne. Ill. Univ.*, 388 F.3d 559, 569 (7th Cir. 2004) (collecting cases). Despite such waiver, the merits of Plaintiff's claims are addressed below, and the result remains the same.

To succeed on a claim of race discrimination under Title VII, a plaintiff must show that his race caused an "adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). An adverse employment action means "some quantitative or qualitative change in the terms or conditions of the plaintiff's

6

employment" that goes beyond merely conflicting with the plaintiff's subjective preferences. *Madlock v. WEC Energy Grp., Inc.*, 885 F.3d 465, 470 (7th Cir. 2018). Thus, "a transfer involving no reduction in pay and no more than a minor change in working conditions will not do." *Id.* (internal quotation marks omitted).

Plaintiff offers no evidence that he suffered any adverse employment action. The parties agree that Plaintiff remains employed as a correctional officer with his regular salary. [27] ¶ 5. Plaintiff merely moved to different divisions within the Cook County Jail without experiencing any reduction in salary, loss of benefits, or change in career prospects; thus, no adverse employment action occurred. *See Madlock*, 885 F.3d at 470. This Court grants summary judgment to Defendants on Plaintiff's race-discrimination claim.

To establish a hostile work environment under Title VII, a plaintiff must show (among other things) that he experienced harassment so severe or pervasive that it actually altered the conditions of his work environment and made them "hellish" to endure. *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 645 (7th Cir. 2005) (a workplace must be "hellish" to be actionable) (internal quotation marks omitted); *Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 895–96 (7th Cir. 2016). Courts consider the totality of the circumstances in assessing a potentially hostile work environment, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998).

7

The conduct that Plaintiff complains of here, although rude and unacceptable, fails to constitute a hellish work environment under the law. On three occasions, Cordoba squeezed Plaintiff's breast. [27] ¶ 24. On three other occasions, Cuddy used the N-word in Plaintiff's presence. *Id.* ¶ 23. Plaintiff offers no evidence that these isolated incidents affected his job performance or that he felt physically threatened or humiliated. Under controlling case law, "stray remarks and the random use of a racial epithet" cannot support a claim for a hostile work environment. *Lilly v. Roadway Express, Inc.*, 6 F. App'x 358, 359 (7th Cir. 2001) (citing *Faragher*, 524 U.S. at 788).

Also, the record indicates that Cuddy did not direct his comments at Plaintiff; such "secondhand harassment" possesses a lesser impact than direct harassment. *Ellis v. CCA of Tenn. LLC*, 650 F.3d 640, 647 n.2 (7th Cir. 2011). Even taking the evidence in the light most favorable to Plaintiff, this Court finds that no reasonable jury could conclude that Cordoba and Cuddy's actions were severe enough to create a hellish environment. *See Faragher*, 524 U.S. at 787–88; *cf. Gendry v. Exp. Packaging Co.*, 238 F.3d 842, 851 (7th Cir. 2001) (successful plaintiff "hated" her job, "often cried when she went to work," and sought medical treatment for "depression caused by the oppressive workplace environment").

Likewise, although this Court has no doubt that Cordoba and Cuddy's behavior justifiably upset Plaintiff, their behavior does not qualify as "pervasive" under the law. In the Seventh Circuit, "relatively isolated instances of non-severe misconduct will not support a claim of a hostile environment." *Whittaker*, 424 F.3d

at 646. In *Baskerville v. Culligan International Co.*, for example, the Seventh Circuit overturned a jury verdict for a plaintiff who testified to at least nine sexually inappropriate things that her supervisor said to her over seven months. 50 F.3d 428, 431 (1995). And the plaintiff in *Benitez v. American Standard Circuits, Inc.* survived summary judgment by alleging that his supervisor not only grabbed his crotch on two occasions, but also tried to grope him at least twice weekly for eight years. 678 F. Supp. 2d 745, 758 (N.D. Ill. 2010); *see also Smuk v. Specialty Foods Grp., Inc.*, No. 13-cv-8282, 2016 WL 3742849, at *5 (N.D. Ill. July 13, 2016) (plaintiff employee survived summary judgment by alleging, among other things, that his supervisor grabbed his butt and crotch and commented about his body almost daily for eight years).

In those cases, the aggregate harassment became "an incessant part of the workplace environment"—"pervasive enough and corrosive enough" to meet the requisite standard for liability. *Jackson v. County of Racine*, 474 F.3d 493, 499 (7th Cir. 2007). Plaintiff has not shown that his coworkers' occasional harassment formed "an incessant part of his workplace environment." *Id.* Because Plaintiff's evidence fails "to show a workplace permeated with discriminatory ridicule, intimidation, and insult," this Court grants summary judgment to Defendants on the hostile work environment claim. *Cf. Taylor v. W. & S. Life Ins. Co.*, 966 F.2d 1188, 1191 (7th Cir. 1992) (finding a hostile work environment where the plaintiff's boss consistently made racial comments and once held a gun to plaintiff's head, took a photo of the incident, and later showed it at a staff meeting while making racial

9

jokes); *Brooms v. Regal Tube Co.,* 881 F.2d 412, 417 (7th Cir. 1989) (finding a hostile work environment where a human resources manager threatened to kill the plaintiff and repeatedly showed her racist pornographic photos).

### B. Count II: "Unlawful Retaliation Discrimination"

Count II primarily alleges that Defendants unlawfully retaliated against Plaintiff under the ADA by failing to accommodate his disability. *See* [1] ¶¶ 56–63. To the extent that Count II also alleges failure to accommodate as a separate claim, *see id.*, this Court addresses that with Count I in the next section. Defendants argue that Count II fails because Plaintiff did not suffer any adverse employment action. [26] at 8. Excluding the portions of Plaintiff's response brief that improperly discuss events from June 2017 and later, [33] at 6, Plaintiff's response includes only one paragraph addressing Count II:

> In response to Defendants' assertion that it [sic] has offered reasonable accommodation of Plaintiff's disabilities, Plaintiff has provided his Affidavit[1] demonstrating that his ergonomic chair was taken from him subsequently to when it was furnished to him in 2015, and not replaced with an appropriate ergonomic chair. (See Plaintiff's LR 56.1(b)(3)(C) CSUF, paras. 3, 6–9). In addition to one of the replacement chairs having no arms, the chair was too small to seat Plaintiff comfortably, which rendered the substitute chair non-ergonomic. (See Plaintiff's LR 56.1(b)(3)(C) CSUF, para. 3).

[33] at 5–6.

Here again, Plaintiff's counsel effectively waived Count II by making this perfunctory and undeveloped argument. *See Smith*, 388 F.3d at 569 (collecting cases). Despite this waiver, however, the merits of the claim are still addressed

---

[1] Most of which this Court disregarded for improperly attempting to amend the complaint by raising new allegations at summary judgment, and for contradicting Plaintiff's deposition.

below, and the result remains unchanged.

To succeed on an ADA retaliation claim, a plaintiff must show that his employer took a materially adverse action against him because he engaged in statutorily protected activity. *Freelain v. Village of Oak Park*, --- F.3d ---, 2018 WL 1999330, at *4 (7th Cir. 2018). In the retaliation context, a materially adverse action means something that "'would have dissuaded a reasonable worker from' engaging in protected activity." *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

As discussed above, Plaintiff offers no evidence that Defendants took a materially adverse action against him. The parties agree that Plaintiff remains employed as a correctional officer with his regular salary. [27] ¶ 5. Plaintiff simply moved to different divisions within the jail without experiencing any reduction in salary, loss of benefits, or change in career prospects. *Id.* So, Plaintiff's retaliation claim hinges on his (implicit) argument that Defendants' alleged failure to accommodate constitutes a materially adverse action. *See* [33] at 5–6. Courts in this district consistently reject that circular argument, holding that a failure to accommodate cannot pull double duty as an adverse action for an ADA retaliation claim. *See Moore-Fotso v. Bd. of Educ. of Chi.*, 211 F. Supp. 3d 1012, 1037–38 (N.D. Ill. 2016) (collecting cases). Congress did not intend "to provide plaintiffs redundant relief for the same conduct when it established the anti-retaliation provisions of the ADA." *Id.* (internal quotation marks omitted). Thus, this Court grants summary judgment to Defendants on Count II.

### C. Count I: "Americans with Disabilities Act Retaliation"

Despite its title, Count I alleges that Defendants failed to accommodate Plaintiff's disabilities and created a hostile work environment. *See* [1] ¶¶ 1–17. Defendants argue that they provided reasonable accommodations for Plaintiff and that the ADA does not create an independent cause of action for hostile work environment claims. [26] at 4–9. Plaintiff's counsel offers little in response besides broad conclusory assertions that genuine issues of material fact preclude summary judgment. *See generally* [33]. Such skeletal arguments amount to waiver. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.") Nevertheless, once again, this Court also addresses the merits of Plaintiff's claims below.

The Seventh Circuit has not yet decided whether the ADA allows for hostile work environment claims. *See Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 603 (7th Cir. 2009). Even assuming that such claims remain actionable, Plaintiff's claim fails because the conduct that he complains of was neither severe enough nor pervasive enough to create a "hellish" work environment. *See Cole*, 838 F.3d at 895–96; *Whittaker*, 424 F.3d at 645.[2] Construing the evidence in the light most favorable to Plaintiff, the record shows that Milton ridiculed Plaintiff "on a couple of occasions" by telling him in front of detainees: "Go take your medicine." [27] ¶ 21. Also, on one day in early 2016, Milton twice prevented Plaintiff from taking his insulin shots in a timely manner, although he took the shots later. *Id.* ¶ 18.

---

[2] Courts addressing ADA claims of a hostile work environment look to Title VII precedent. *See Lloyd*, 552 F.3d at 603.

Plaintiff offers no evidence that he suffered any harm or that his medical condition worsened because of this delay; likewise, Plaintiff offers no evidence that any of Milton's harassing behavior ever affected his job performance or made him feel threatened. As this Court explained above in discussing Plaintiff's Title VII claim, such isolated instances of harassment do not demonstrate a hellish environment. *See Baskerville*, 50 F.3d at 431; *cf. Benitez*, 678 F. Supp. 2d at 758 (plaintiff's claim survived summary judgment where his supervisor tried to grope him at least two times a week for nearly a decade). This Court grants summary judgment to Defendants on Plaintiff's hostile work environment claim.

To succeed on his claim for failure to accommodate, Plaintiff would need to show that: (1) he is a qualified individual with a disability; (2) his employer knew of his disability; and (3) his employer failed to reasonably accommodate the disability. *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 682 (7th Cir. 2014). Plaintiff's claim fails because the evidence shows that Defendants reasonably accommodated him.

The ADA does not require an employer to provide the exact accommodation that an employee requests. *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1178 (7th Cir. 2013), *overruled on other grounds by Ortiz*, 834 F.3d at 765. Rather, an employer must do something "that effectively accommodates the disabled employee's limitations." *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 802 (7th Cir. 2005). Thus, Defendants did not violate the ADA by failing to give Plaintiff his own private bathroom. They gave him easy access to bathrooms with locks so he could administer his insulin shots in private, [27] ¶¶ 13, 26–27, thus effectively

accommodating his limitations, *see Cloe*, 712 F.3d at 1178 (employer reasonably accommodated employee who had difficulty walking by providing her parking in a nearby lot and on nearby streets instead of granting her request for an underground parking spot); *Gratzl v. Office of Chief Judges of 12th, 18th, 19th, and 22nd Judicial Circuits*, 601 F.3d 674, 681–82 (7th Cir. 2010) (permitting breaks, and offering to station an incontinent employee near a bathroom, constituted a reasonable accommodation even though employer did not grant employee's request to transfer to a completely different job).

Similarly, Defendants did not violate the ADA by failing to provide Plaintiff with his own refrigerator for his insulin. *See Sears*, 417 F.3d at 802. They first tried to accommodate Plaintiff by providing him a cooling bag; when Plaintiff did not like that solution, he started sharing a refrigerator with the employee in the office next to his post. [27] ¶ 17. That arrangement allowed Plaintiff to keep his insulin cold, and he fails to offer any evidence that he ever struggled to access the insulin or that he otherwise experienced any problems. Thus, the arrangement reasonably accommodated Plaintiff's need to keep his insulin cold and have easy access to it. *See Cloe*, 712 F.3d at 1178; *Gratzl*, 601 F.3d at 681–82.

Finally, Defendants initially provided Plaintiff an ergonomic chair that he found satisfactory. [27] ¶ 11. When someone on a different shift took that chair and damaged it, Defendants offered Plaintiff a new ergonomic chair, although he did not like that the new chair lacked arms. *Id.* The ADA does not entitle Plaintiff to an ergonomic chair that meets his exact specifications. *See Cloe*, 712 F.3d at 1178. It

14

entitles him to a chair that "effectively accommodates" his limitations on standing for prolonged periods of time. *See Sears*, 417 F.3d at 802. Plaintiff offers no evidence (besides his disregarded declaration) that the chair failed to meet his needs. Thus, this Court grants summary judgment to Defendants on Plaintiff's failure-to-accommodate claim. *See Celotex*, 477 U.S. at 322 (Rule 56 mandates entering summary judgment against a party who fails to establish the existence of an element upon which that party will bear the burden of proof at trial).

### D. Count IV: "Indemnification Claim"

Count IV seeks to hold Cook County liable for indemnifying the Sheriff. [1] ¶¶ 81–83. This claim fails because no substantive claims remain. *See Carver v. Sheriff of LaSalle Cnty., Ill.*, 324 F.3d 947, 948 (7th Cir. 2003).

## IV. Conclusion

This Court grants Defendants' motion for summary judgment [25] and enters judgment for Defendants and against Plaintiff. All dates and deadlines are stricken. Civil case terminated.

Dated: May 7, 2018

Entered:

_____
John Robert Blakey
United States District Judge